424 JULY, 1897.

New York, N. H. & H. R. R. Co. *v.* Long et al. Vol. 69

# THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY *vs.* GEORGE M. LONG ET AL.

Second Judicial District, Norwich, May Term, 1897. ANDREWS, C. J., TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

The authority given railroad companies to take land necessary for their purposes (General Statutes, §§ 3460–3464), upon the approval of the railroad commissioners, is in effect a declaration that land taken for railroad purposes is taken for a public use. Accordingly, when a railroad company has expressed its desire and intention to take certain land for railroad purposes, and has obtained the approval of the railroad commissioners in the manner prescribed in the statutes, the question of the necessity and extent of the taking is settled as conclusively as if the legislature had determined it.

In condemnation proceedings under these sections, the approval of the railroad commissioners is the essential fact. If that approval is duly given, it is ordinarily immaterial that the corporate vote to appropriate the land was formulated outside the territorial limits of this State; provided the action so taken is obligatory upon the corporation.

The plaintiff sought to take land in New London, adjoining the tracks of the Shore Line Railroad Company, of which it was formerly the lessee. In 1889 an increase of the plaintiff's capital stock was authorized, and an exchange thereof for the stock of its leased lines; the Act providing that when such exchange was completed the franchises of the leased roads should be merged in and belong to the plaintiff. *Held* that in view of the lapse of time since this legislation, and of the absence of any averment that such exchange had not been completed, it could not be said that the plaintiff was powerless to take the land described.

The question whether parties in condemnation proceedings have been unable to agree upon terms, is one of fact for the trial court, and must be proved before appraisers can be appointed.

Under a denial of the applicant's averment that he "has been unable to obtain the land by agreement with the owners," the latter may show that the applicant endeavored to buy the land of them for purposes other than those for which he seeks to have it condemned.

[Argued May 26th—decided July 13th, 1897.]

APPLICATION for the appointment of appraisers to estimate damages accruing to the respondents from the taking of their land for railroad purposes, made to the *Hon. Milton A. Shumway*, a judge of the Superior Court; facts found and judgment rendered in favor of the applicant, and appeal

by the respondents for alleged errors in the rulings of the judge. *Error, and cause remanded.*

In this court the appellee filed a motion to erase the appeal, on the ground that none could be taken in proceedings of this nature ; but withdrew the motion when the case was reached for argument.

The application to *Judge Shumway* is as follows :—

" The application of the New York, New Haven and Hartford Railroad Company, a railroad corporation under the laws of this State, respectfully represents :—

" 1. Said railroad company on February 8th, 1896, as set forth in the following resolution by its board of directors, took for railroad purposes the lands therein described, *viz. :* ' *Resolved*, That this company, subject to the approval of the railroad commissioners, hereby takes for additional tracks, turnouts and freight and passenger stations and depots at New London, Connecticut, the following described piece or parcel of land situate, lying and being in said town of New London, and bounded and described as follows, to wit : the tract belongs to George M. Long, Edward T. Pettigrew and Thomas Hamilton, all of the town of Groton, Conn., and is bounded on the north and west by lands belonging to or leased by this company, on the east by New London harbor, and on the south by lands now or late of George H. Powers ; together with all easements, franchises and rights connected with or appurtenant to said described tract and parcel of land.'

" 2. The said George M. Long, Edward T. Pettigrew and Thomas Hamilton named in said resolution, are the owners of said tract of land as aforesaid, and of all the easements, franchises and rights connected therewith or appurtenant thereto, except a right or easement belonging to Ambrose Lester, of New London, in said State, to maintain and use water pipes as now laid across said land for the purpose of supplying vessels with water, and with the right of access and of mooring a water boat for the convenient exercise of said right. Thomas F. Morgan, of Groton, is the owner of a mortgage interest in the said lands."

426                    JULY, 1897.

New York, N. H. & H. R. R. Co. v. Long et al.        Vol. 69

"3. On March 27th, 1896, the railroad commissioners of this State, after due notice to all parties in interest, to wit, to the aforesaid persons, and after due hearing had, made their order and finding, approving the taking by said railroad company of said land with the easements, franchises and rights connected therewith or appurtenant thereto, a copy of which finding and order is hereto annexed as *Exhibit A.*

"4. Said railroad company on February 8th, 1896, had, and ever since has had, the right to take said real estate, as above described, for said purposes, and, although it has endeavored to agree, has been unable to obtain said real estate by agreement with the parties interested therein. Wherefore said railroad company applies to your honor for the appointment of appraisers, as provided by statute, to estimate all damages that may arise to any person from the taking and occupation of the aforesaid real estate for railroad purposes, and for such other and further relief as it may be entitled to receive. Dated at New London, this 7th day of January, 1897."

*Exhibit A* reads as follows :—

"STATE OF CONNECTICUT,
"OFFICE OF THE RAILROAD COMMISSIONERS.
"HARTFORD, March —, 1896.

"Upon the foregoing application of the New York, New Haven and Hartford Railroad Company, after due notice to all parties in interest, and after due hearing of said parties at the time and place stated in said notice, we find that the property described in said application consists of a tract of land situated on New London Harbor in said New London, bounded as appears in said application, with riparian rights or franchises in said harbor connected with or appurtenant to said land, and with a right or easement belonging to Ambrose Lester, of said New London, to maintain and use water pipes as now laid across said land for the purpose of supplying vessels with water and with the right of access and of mooring a water boat for the convenient exercise of said right.

"We further find that said land, with said easements,

franchises and rights connected therewith or appurtenant thereto, as described in said application and vote of condemnation are necessary to said railroad company for the purposes set forth in said application and vote, and we approve the taking by said railroad company for such purposes of such land, with such easements, franchises and rights.

> " Geo. M. Woodruff,
> " Wm. O. Seymour,
> " Alex. C. Robertson,
> > " *Railroad Commissioners.*"

The judge issued an order of notice, the parties defendant appeared before him on the day named, and filed a demurrer to the application, which was overruled. The defendants then filed an answer setting up four defenses. The first defense admitted the second paragraph of the application and denied the other paragraphs. The second defense alleged that the said vote of the plaintiff's directors was passed, "not within the territorial limits of the State of Connecticut." The third defense averred that there was no necessity for the plaintiff to take the said property or any part thereof. The fourth defense is as follows :—

### " *Fourth Defense.*

" To so much of said application as asks for the appointment of appraisers to fix the value of the easements, franchises and rights referred to in the said vote set forth in said application, the defendants say : Par. 1. That there is no necessity for the applicant to take the whole or any part of said easements, franchises and rights for railroad purposes, or for any purpose for which the applicant could lawfully take the defendants' property. Par. 2. The defendants allege that either the whole or the greater part of the easements, franchises and rights referred to in said alleged vote set forth in said application, are outside of the limits of any survey made by the railroad company, and outside the territorial limits of any location intended to be occupied by any structure whatever by the said applicant. Par. 3. Certain of the easements, franchises and rights referred to in said paragraph 1 are

necessary to the applicant, only for the purpose of establishing and continuing a line of boats or ships, and for the purpose of prosecuting the business of transporting goods, wares, merchandise and passengers by water, and not as a railroad corporation. Par. 4. Some part of said easements, franchises and rights are sought to be obtained by the applicant by this process for the purpose of enabling a water carrier or transportation company to have and use the same for the purpose of carriage and transportation for hire of goods, wares, merchandise and passengers upon the high seas. Par. .5. There is no description of the easements, franchises and rights claimed to have been taken, and this objection was made before the railroad commissioners. Par. 6. Before the railroad commissioners, the defendants objected and protested against any action being taken therein, because no taking of the property in question was alleged in the application to said board, and because there was no sufficient and accurate description of the property to be taken, alleged or contained in the application to said board, and because there was no sufficient and definite purpose alleged for the claimed taking, and because the nature of some of the easements, franchises and rights was such as not to be the subject of a taking as claimed by the applicant. 7. The map showing the property claimed to have been taken, and produced before and acted upon by the railroad commissioners, and lodged with them and made part of their finding, differs materially from the property claimed to be taken, as described in the vote constituting the alleged taking. 8. The said property described in said vote constituting the alleged taking was never, and is not, within the layout or location of the applicant's road or right of way, and was never and is not within its line of road, location or right of way as altered, located, approved or established. Par. 9. There was no notice or warning given of the alleged meeting of the said board of directors touching or relating to the subject-matter of the taking of the property in question, or relating to any proposed action, vote or resolution, in respect to such taking. Par. 10. The whole number of directors were not present at

said alleged meeting, nor did the full board of directors participate in said meeting or vote."

To these defenses the plaintiff demurred, except paragraphs 4 and 7 of the fourth defense. These paragraphs were denied. The judge heard the parties and found the issues of law and fact for the plaintiff, and appointed appraisers.

The finding of facts is this: "1. Upon the trial of the issues of fact as on file, the said applicant, The New York, New Haven & Hartford Railroad Company, offered the testimony of S. A. Gardner to prove the allegations of paragraph 4 of its complaint, that the said applicant had endeavored to agree, but had been unable to obtain the property in question by agreement with the parties interested therein. The respondents then, for the purpose of proving the allegations of the 4th paragraph of the 4th defense, asked said Gardner the following question: 'At the time you were trying to agree with G. M. Long and others for the purchase of this property, did you not say to them that it was wanted for steamboat purposes?' The applicant objected to this question, on the ground that parol evidence of this character was not admissible to contradict the formal recorded vote of condemnation, and that the declarations of the agent of the corporation could not change the purposes for which the property was taken in such vote of condemnation. The evidence was excluded and the respondents duly excepted. 2. On said trial the respondents offered parol evidence to show, as they claimed, that a certain map was produced before the railroad commissioners at the hearing before them, which said map limited and confined the property taken, and confined the description of the property so as to include only the wharf superstructure upon said property, and did not include the wharfage rights extending toward the channel of and into the harbor of New London. The respondents also offered to show in connection with said evidence, that it was agreed that said map should be marked and should become a part of the finding of the railroad commissioners, approving of the taking of the land described; that said map was marked, but that it was not on file in the railroad commissioners' office. To this evi-

dence the applicant objected. It was excluded and the respondents duly excepted. 3. All the allegations of the application are found true; the allegations of the answer, which were held to be sufficient in law, are found not true, and appraisers were apppointed as appears by the record in the cause. The demurrer to the application was overruled, and the demurrer to the respondents' answer was sustained in part and overruled in part, as appears on file."

The defendants appealed to this court.

*Henry Stoddard* and *Tracy Waller*, for the appellants (respondents).

The exercise of the right to take property *in invitum* is not the exercise of an ordinary business power; and therefore such power must be exercised within the limits of the jurisdiction of this State, unless the legislature has by specific and explicit legislation otherwise provided. *Keifer v. Bridgeport*, 68 Conn. 412. There is no location of the plaintiff's road, established by law, to warrant the taking of the property in question. The location of the plaintiff's road is from Hartford to New York, running through New Haven, and distant at least fifty miles from the property in question. The mere fact of a lease does not confer upon the plaintiff corporation the right to exercise the power of eminent domain to take property in relation to the leased railroad. *Mayor v. Norwich & Wor. R. R.*, 109 Mass. 103, 114; *Kip v. N. Y. & Harlem R. R.*, 67 N. Y. 227; *In re N. Y., L. & W. R. R.*, 99 id. 21. The question asked of Capt. Gardner was improperly excluded. The question was not simply whether the applicant could obtain the property, but whether there was a failure to obtain it for a specific purpose. There is no sufficient description of the property to be taken. From the description set forth by the railroad company in its alleged taking of said land, one may as well infer that it contains 20 acres as 1 acre. *Kohlhepp v. West Roxbury*, 120 Mass. 599; *In re New York & H. R. R. R.*, 70 N. Y. 191; *Grand Junction R. & P. Co. v. County Comr's*, 14 Gray, 553; *Sheehan v. Fitchburgh*, 131 Mass. 527; *Lancaster v. Kennebeck Log Driving, Co.* 62

Me. 272.   No more land can be then taken than is necessary
to satisfy public use.   Such necessity must exist and should
be alleged by the railroad company desiring to take the land,
easements, franchises and rights.   Neither the vote of the
railroad company to take said land, easements, franchises and
rights, nor their application to the railroad commissioners for
approval of their alleged taking, contained such a statement
of necessity.   How can it appear that a necessity exists upon
the part of the railroad company to take the whole of the
easements, franchises and rights unless there are allegations
of fact showing such necessity?   *In re Montgomery*, 48 Fed.
Rep. 896; *Sixth Ave. R. R.* v. *Kerr*, 72 N. Y. 332; Cooley,
Const. Lim. 539; *Embury* v. *Connor*, 3 Coms. 54; *Spofford*
v. *Bucksport & B. R. R.*, 66 Me. 26; *Chicago & N. W. R. R.*
v. *Chicago*, 132 Ill. 372.   The question of necessity was prop-
erly before the judge of the Superior Court.   What effect
can be given to the statute if the judge of the Superior Court,
upon a hearing, is limited in his inquiry simply to the ques-
tion of the vote taken by the railroad company, and an ap-
proval of such taking by the railroad commissioners?   2 Kent's
Comm. 340.   The appellants had a right to show the real
purpose for which this land was sought to be taken and con-
demned.   The vote of the railroad company declaring the
purpose for which they wished to confine the use of the land,
is not conclusive.   There is power somewhere to inquire into
the real purpose, and that power must lie with the judge of
the Superior Court.   *Ironton Ry. Co.* v. *Ironton*, 19 Ohio St.
299; *Memphis Freight Co.* v. *Memphis*, 4 Goldw. (Tenn.)
419; *R. R. Co.* v. *Iron Works*, 31 W. Va. 710; *Rensseller &
S. R. R.* v. *Davis*, 43 N. Y. 146; *New York & H. Ry. Co.* v.
*Kip*, 46 id. 552.

*Augustus Brandegee* and *Hadlai A. Hull*, for the appellee
(petitioner).

In the absence of statutory limitation, a railroad company
after having located and constructed its road may, under the
general powers in its charter, as the expansion of its business
requires, take additional land for depot accommodations,

side tracks, etc. Such taking is not considered as involving a change of location. *Dietricks* v. *Lincoln & N. W. R. R.*, 13 Neb. 361; *W. P. & B. R. R.* v. *Williams*, 54 Pa. St. 103; *U. P. R. R.* v. *A. T. & S. F. R. R.*, 26 Kan. 669; *C., B. & Q. R. R.* v. *Wilson*, 17 Ill. 123; *Prather* v. *Jefferson R. R.*, 52 Ind. 16. The description points out the property to be taken with all the definiteness and particularity that by our law is requisite for a deed. It is sufficient to notify the owners, the appraisers and the public that the land and all rights of whatever nature connected with it are to be appraised, paid for and sequestered for railroad uses. A description not drawn with the precision usually found in conveyances may yet, in condemnation proceedings sufficiently appraise the owner as to the property wanted. *Cleveland* v. *Prentis*, 13 Ohio St. 373; *Jackson* v. *Rankin*, 67 Wis. 28; *Byron* v. *Blount*, 97 Ill. 62; *Lower* v. *C., B. & Q. R. R.*, 59 Iowa, 563. The authorities cited in appellant's brief—of error in proceedings by reason of insufficient description of property to be taken—will be found on examination to be cases in which the language was so indefinite that it was impossible to determine how *much* or *what portion* of the property was condemned. In the following cases the description was held to be sufficient: *Dougherty* v. *Summerville*, 21 N. J. L. 442; *Wilkin* v. *First Div. St. Paul*, 16 Minn. 271; *Lower* v. *Chicago, etc., R. R. supra; State* v. *Plainfield*, 41 N. J. L. 138; *Coster* v. *N. J.*, 23 id. 225; *In re New Land Avenue*, 38 N. Y. 796. There is not a word in the statute which requires the petitioner either to allege or to prove a " *necessity* " for a taking. It may be questioned whether for this particular purpose even the " approval" of the railroad commissioners is necessary. Genl. Stats. § 3461. If such an " approval" is requisite, it may be as well based by the railroad commissioners on the *convenience* and safety, as on the " *necessity*" of either the railroad or the public. Of such approval the board of railroad commissioners are the sole and exclusive judges, and from their finding there is no appeal. *Waterbury* v. *H., P. & F. R. R.*, 27 Conn. 154; *N. Y., H. & N. R. R.* v. *B., H. & E. R. R.*, 36 id. 200. But in the case at bar the board

of railroad commissioners expressly decided, after full hearing, "that said lands with said easements, franchises and rights connected therewith and appurtenant thereto, *as described in said application and vote of condemnation,* are *necessary,* etc., and we do *approve* the taking of said railroad company for such purposes." See also *Lynch* v. *Forbes,* 161 Mass. 303; Lewis on Em. Dom. §§ 219, 239; Randolph on Em. Dom. §§ 185, 202. The power of eminent domain, when conferred upon railroads, has invariably been exercised by a vote of its board of directors, and in no case by the corporation in its corporate capacity. The claim is made that the power of condemnation, being a sovereign power of the State, cannot be exercised out of the limits of the State. This claim is more sentimental than practical. 1 Potter on Corp. 13; *Arms* v. *Conant,* 36 Vt. 744; 1 Morawetz on Corp. § 359. That *the directors* of a corporation may meet out of the State and pass any votes or resolutions necessary for the administration of its affairs, though once doubted, is now so well settled as to be no longer a subject of controversy. *McCall* v. *Bryam Co.,* 6 Conn. 427–436; *Westbrook's Appeal,* 57 id. 101; 1 Rorer on Railroads, 211; 1 Wood on Railroads, 346; 2 Potter on Corporations, 587 and notes; *Galveston R. R.* v. *Cowdrey,* 11 Wall. 477; *Smith* v. *Alvord,* 63 Barb. 413; *Coe* v. *Midland,* 4 Stew. 105–117. We maintain that land with its easements may—with the approval of the railroad commissioners—be taken for any of the purposes enumerated in the statute, for carrying on the lawful business of the company, either by cars or boats, or both, whether by land or water. The question was very fully considered and exhaustively discussed in the case of *In re N. Y. Central, etc., R. R.,* 77 N. Y. 248, 263, 268. Any other rule would deprive a railroad company of half the value of the power of condemnation. *In re Staten Island Rapid Transit Co.,* 103 N. Y. 256. The offered testimony of the witness Gardner was properly excluded. The vote of the board of directors showing the purposes for which the land and easements were to be taken, and the finding by the board of railroad commissioners that they approved of the taking for the purposes set forth in the application, could

not be contradicted or impeached by such testimony. Besides there was not the slightest testimony that Gardner was authorized to make any such claimed declaration. The questions raised by appellant's appeal are each and all purely technical. They do not deny the power of the railroad company ultimately to take for the public welfare the property in question. They simply pick alleged flaws in the mode of procedure. They stick in the bark, but do not touch the ultimate right of condemnation.

ANDREWS, C. J. Section 3464 of the General Statutes prescribes that "when any railroad company shall have the right to take real estate for railroad purposes, and cannot obtain it by agreement with the parties interested therein, it may apply to any judge of the Superior Court for the appointment of appraisers to estimate all damages," etc. The application in this case is brought under that section. It purports to set forth facts from which it will appear that the applicant, a railroad company, has the right to take for railroad purposes the real estate described in the first paragraph, and that it cannot obtain the same by agreement with the parties interested therein. The judge held that both these propositions were properly averred and had been proved, and thereupon appointed the appraisers.

The defendants' appeal contains a long list of assignments of error. They can, however, all be considered under the two propositions above indicated: Did the facts show that the applicant, being a railroad company, had the right to take the real estate described, for railroad purposes; and was it unable to obtain the same by agreement with the parties interested therein? And, perhaps, the third question: were any errors committed in the course of the hearing?

It was necessary for the judge to answer the first two questions in the affirmative, before he had jurisdiction to appoint the appraisers. And it is necessary now, in order that the appointment be a valid one, that the third question be answered in the negative. To answer these questions with clearness it will be useful to recur briefly to fundamental principles.

The Constitution provides that "the property of no person shall be taken for public use, without just compensation therefor." Art. I, § 11. "In its application to the condemnation of land for railway use, the word 'taken' in the Constitution means the exclusion of the owner from use and possession and the actual assumption of exclusive possession by the railroad corporation at the termination and as the result of judicial proceedings." *Woodruff* v. *Catlin*, 54 Conn. 277, 297. See also *Shannahan* v. *Waterbury*, 63 Conn. 420, 424; *Stevens* v. *Battell*, 49 id. 156, 163. Title to all property is held on the implied condition that it must be surrendered to the government, either in whole or in part, when the public necessities evidenced according to the established forms of law, demand. *Todd* v. *Austin*, 34 Conn. 78, 88; *The People* v. *The Mayor*, 32 Barb. 102, 112. This power to appropriate private property is the eminent domain. And every species of property which the government may require may be seized and appropriated under this right. Cooley, Const. Lim. (6th ed.) 646. Primarily the power to exercise this right resides with the legislature. It is a right which appertains to sovereignty. *Clark* v. *Saybrook*, 21 Conn. 313, 324; *N. Y., H. & N. R. R.* v. *Boston, H. & E. R. R.*, 36 id. 196; *Goodwin* v. *Wethersfield*, 43 id. 437, 438; 2 Hilliard on Real Property, 585; Randolph on Eminent Domain, § 99. But power to exercise this right may be conferred by the legislature on an individual, a board, or a corporation. *Olmstead* v. *Camp*, 33 Conn. 532; *Bradley* v. *N. Y. & N. H. R. R.*, 21 id. 294; *Eaton* v. *Boston, etc., R. R.*, 51 N. H. 504. What the legislature really does in such cases, is to declare the public use and the existence of a public necessity for the condemnation of land to such use, and then to confer on the individual, the board, or the corporation, the right to select the property which is to be appropriated to that use. Thus, in the flowage laws, the legislature confers the right to take land, on the individual who desires to erect a dam. In the highway laws the right to take land for highways is conferred on the selectmen of the towns, or committees of the Superior Court; and in cases of railroads the right is conferred on the corporation

owning the railroad. Cemetery associations, water com-
panies, street railways, and other like companies, are other
instances of the same kind. In each case the legislature
declares the use to be a public use. The power is a political
one, or, as sometimes called, a legislative or administrative
one. When exercised by the legislature, its decision of the
question of public use and as to the extent, necessity and
propriety of the taking, is ordinarily conclusive. With its
decision the courts cannot ordinarily interfere. *Todd* v.
*Austin, Woodruff* v. *Catlin, supra; Woodruff* v. *N. Y. & N.
E. R. R. Co.*, 59 Conn. 63'; *Varick* v. *Smith*, 5 Paige, 137 ;
*Kramer* v. *Cleveland & P. R. R.*, 5 Ohio St. 140, 146 ; *The
Matter of Union Ferry*, 98 N. Y. 139 ; Cooley, Const. Lim.
648. The act of the legislature is the only adjudication nec-
essary on this question, unless the Constitution has required
something further. When this power is exercised by a cor-
poration upon which the legislature has conferred the right
to use it, all the steps required by the legislature must be
complied with. And when these required steps have been
complied with, then the decision of the corporation as to the
extent, necessity and propriety of the taking, is as conclusive
as when made by the legislature itself. *Harwinton* v. *Catlin*,
19 Conn. 520 ; *Cockcroft's Appeal*, 60 id. 161 ; *The People* v.
*Smith*, 21 N. Y. 595 ; *Matter of Fowler*, 53 id. 60 ; *Ash* v. *Cum-
mings*, 50 N. H. 591 ; *Petition of Mt. Washington Road Co.*, 35
id. 134 ; *National Docks R. R.* v. *Central R. R.*, 32 N. J. Eq.
755 ; Cooley, Const. Lim. 660. The exercise of the power
by the legislative appointee is still the exercise of a political
power, which the courts may not control. *United States* v.
*Jones*, 109 U. S. 513, 519. Doubtless the courts may in any
case inquire whether or not the steps prescribed by the legisla-
ture have been taken; and whether the use for which seques-
tration is authorized is in its nature a public and not merely a
private use. If any legislative appointee should in fact use
the property taken for any other use than the one which the
legislature had declared to be a public use, it could be re-
strained by an injunction or other suitable remedy.

The legislature of this State has provided that railroads

may take any such land as they deem necessary for their purposes, upon the approval of the railroad commissioners, in the manner pointed out in the statute; and so has, in effect, declared that land taken by a railroad company for railroad purposes, is taken for a public use. General Statutes, §§ 3460–3462; *Bradley* v. *N. Y. & N. H. R. R.*, 21 Conn. 294. Whenever, then, any railroad company has expressed its desire and intention to take land for its purposes as a railroad, and has obtained the approval of the railroad commissioners thereto in the manner set forth in the statutes, it would seem, under the authorities, that the question of the necessity and the extent of the taking was settled beyond dispute. But the taking is not complete till the compensation to be paid to the landowner is ascertained and either paid or secured. Unlike the adjudication of the necessity and extent of the taking, the whole process by which the compensation is ascertained is judicial. Cooley, Const. Lim. 695; *Ames* v. *Lake Superior, etc., R. R.*, 21 Minn. 241. The legislature may determine what private property is needed for public purposes—that is a question of a political and legislative character—, but when the taking has been ordered then the question of compensation is judicial. "It does not rest with the public, taking the property, through . . . the legislature, its representative, to say what compensation shall be paid, or even what shall be the rule of compensation. The Constitution has declared that just compensation shall be paid, and the ascertainment of that is a judicial inquiry." *Monongahela Navigation Co.* v. *United States*, 148 U. S. 312, 327. The landowner is not entitled as a matter of right to a jury trial, because the Constitution has not so required; but he is entitled to have an impartial tribunal, with the usual rights and privileges which attend judicial investigations. It is a suit at law. *Searl* v. *School District No. 2*, 124 U. S. 197. Under our practice the application to the judge to appoint the appraisers is the first step in the judicial process. And, as we have indicated, it was necessary for the judge to pass upon the questions presented in the statute and alleged in the application, before he had jurisdiction to appoint the apprais-

ers.   The power to appoint implies the power to pass upon and decide the jurisdictional facts.

The authenticated copy of the vote of the applicant to take, and the ordering of the taking of the land described, with the like copy of the doings of the railroad commissioners, answer the first question in the affirmative.   These records were in the nature of a judgment.

The defendants urge two points which may not be included in the supposed judgment: that the vote was not passed in this State, but in the State of New York; and that the applicant company is not authorized to take land in New London.

In the taking of land for railroad purposes in this State, the approval of the railroad commissioners is the essential fact; and when that approval is duly given, it is not very material that the expression of the corporate will which receives that approval was formulated outside the territorial limits of the State.   Of course it must be an expression of the corporate will which binds the corporation.   In the year 1889 the legislature authorized the applicant to increase its capital stock, and to exchange its own stock for the stock of its leased lines, of which the Shore Line railroad was one; and provided that when such exchange was completed, all the franchises of the leased road should be merged in and belong to the applicant.   After this lapse of time, and there being no averment to the contrary, we are not prepared to say that this applicant is not empowered to take the land described.   We think the first general question was correctly answered by the judge of the court, as it must be now, in the affirmative.

The second general question was decided as one of fact, and that decision is binding on this court unless there is some error.   We pass then to the third question.

The legislature does not intend that any railroad company shall have the right to take land for its purposes by the power of eminent domain, unless it has exhausted all reasonable efforts to obtain the land it desires, by agreement.   The averment that "it cannot obtain it (the land) by agreement with

the parties interested therein," is a necessary one, and must be proved before the appraisers can be appointed. *Williams* v. *H. & N. H. R. R.*, 13 Conn. 397. It was a condition precedent to the right to take the land. *Torrington* v. *Nash*, 17 Conn. 197. This averment in the present application was denied. The first defense was a direct denial of this averment. The fourth paragraph of the fourth defense was in effect an averment that the lands, easements, etc., were sought to be taken not for railroad purposes but for steamboat purposes—an indirect denial. This defense was traversed by the applicant. Upon the issues of fact so joined, the burden of proof was on the applicant to prove its averment that it was unable to obtain the land by agreement; and the burden was on the defendants to prove the fourth paragraph of their fourth defense. For these purposes it would seem that both parties depended upon the testimony of Capt. S. A. Gardner. The defendants asked Capt. Gardner this question: "At the time you were trying to agree with G. M. Long and others for the purchase of this property, did you not say to them that it was wanted for steamboat purposes?" This question was objected to by the applicant and was excluded. We think this was error, and, as it seems to us, a material error. It does not appear whether this question was asked on cross-examination of Capt. Gardner as a witness for the applicant, or was asked of him as a witness of their own. Nor does it make any difference. The question was admissible in either event, and the answer should have been received. The objection to this question and the ruling upon it, missed the point to which the question was directed. It was not asked for the purpose of contradicting the vote of the applicant, or in any way to affect that intent. It was asked for the purpose of showing precisely what took place between Capt. Gardner and the defendants at the time he attempted to negotiate with them in respect to the land. The applicant averred that it needed the land for railroad purposes, and that it could not obtain it by agreement. The averment means, if it has any meaning in the application, that it could not ob-

tain it for railroad purposes, by agreement. If it had sought to obtain it by agreement only for steamboat purposes, then the averment of the application was not proved, and the fourth paragraph of the fourth defense was proved.

There is error, and the case is remanded for further proceedings according to law.

In this opinion the other judges concurred.